1  KATHI VIDAL (State Bar No. 194971)
   kvidal@winston.com
2  MATTHEW R. MCCULLOUGH (State Bar No. 301330)
   mrmccullough@winston.com
3  CARSON SWOPE (State Bar No. 353352)
   cswope@winston.com
4  **WINSTON & STRAWN LLP**
   255 Shoreline Drive, Suite 520
5  Redwood City, CA 94065
   Telephone: (650) 858-6500
6  Facsimile: (650) 858-6550

7  *Attorneys for Petitioner X.AI LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Application of X.AI LLC for Subpoena to OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC<br><br>X.AI LLC,<br><br>    Petitioner,<br><br>v.<br><br>OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC<br><br>    Respondents. | Case No. 3:25-mc-80299<br><br>**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

<a>
</a>

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 2

    A.    xAI Is a Leading AI Company in a Fiercely Competitive Market ............................... 2

    B.    xAI's Confidential Information Drives Its Competitive Advantage............................. 3

    C.    xAI Filed the UK Litigation Alleging Fraiture Misappropriated xAI Trade Secrets ... 3

III. ARGUMENT ......................................................................................................................... 4

    A.    xAI's Application Fulfills the Three Statutory Requirements of Section 1782............ 4

    B.    xAI's Requested Discovery Satisfies Section 1782's Discretionary Factors ............... 6

        1.    OpenAI is not a participant in the UK Litigation ............................................. 6

        2.    The English court would accept the evidence xAI seeks from OpenAI. .......... 7

        3.    xAI does not seek to circumvent UK proof-gathering restrictions or public policy................................................................................................................. 8

        4.    xAI's proposed subpoena is not unduly burdensome. ...................................... 9

        5.    The principles underlying Section 1782 weigh in favor of granting xAI's Application...................................................................................................... 10

IV. CONCLUSION.................................................................................................................... 10

i

Memo. ISO Application for Order Pursuant to 28 U.S.C. § 1782 to Take Discovery
Case No. 3:25-mc-80299

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
  292 F.3d 664 (9th Cir. 2002) .................................................................................. *passim*

*In re Application of Credit Suisse Virtuoso SICAV-SIF in Respect of the Sub-Fund
  Credit Suisse (Lux) Supply Chain Fin. Fund*,
  No. 21-MC-80308-JCS, 2022 WL 1786050 (N.D. Cal. June 1, 2022) .....................9

*In re Ex Parte Application of Glob. Energy Horizons*,
  No. 5:15-mc-80078-PSG, 2015 WL 1325758 (N.D. Cal. Mar. 24, 2015) ...............7

*In re Application of JSC Com. Bank Privatbank*,
  No. 21-MC-80216-VKD, 2021 WL 4355334 (N.D. Cal. Sept. 24, 2021) ...............5

*In re Ex Parte Application of Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ...................................................................5

*In re Ex Parte Application of Qualcomm Inc. v. Apple Inc.*,
  No. 5:24-MC-80019-EJD, 2024 WL 536355 (N.D. Cal. 2024) ..............................6

*In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc.*,
  Misc. Action No. 16-80193-DMR, 2016 WL 6804600 (N.D. Cal. Nov. 17, 2016) ...................5

*Application of Sarrio S.A. for Assistance Before Foreign Tribunals*, 173 F.R.D. 190
  (S.D. Tex. 1995)........................................................................................................7

*Cryolife, Inc. v. Tenaxis Med., Inc.*,
  No. 08-05124, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009).......................................4

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
  No. 19-MC-80277-TSH, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020)....................1

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
  No. 19-MC-80215-WHO(TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) .......8

*In re ex parte Lee-Shim*,
  No. 513MC80199LHKPSG, 2013 WL 5568713 (N.D. Cal. Oct. 9, 2013).............8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)......................................................................................... *passim*

*IS Prime Ltd. v. Glassdoor, Inc.*,
  No. 21-MC-80178-DMR, 2021 WL 5889373 (N.D. Cal. Dec. 13, 2021)...............5

*Khrapunov v. Prosyankin*,
  931 F.3d 922 (9th Cir. 2019) .................................................................................................5

*In re Macquarie Bank Ltd.*,
  No. 2:14-cv-0797-GMN-NJK, 2014 U.S. ..............................................................................7

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ...................................................................................................9

*In re Nat'l Bank Tr.*,
  No. 3:20-MC-85 (CSH), 2021 WL 118531 (D. Conn. Jan. 13, 2021) ....................................7

*In re Newbrook Shipping Corp.*,
  498 F. Supp. 3d 807 (D. Md. 2020) ........................................................................................8

*In re Okamoto*,
  No. 23-MC-80321-RFL, 2024 WL 1091356 (N.D. Cal. Jan. 10, 2024) ..................................1

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
  634 F.3d 557 (9th Cir. 2011) ..............................................................................................8, 9

*In re Procter & Gamble*,
  334 F. Supp. 2d 1112 (E.D. Wis. 2004) .................................................................................9

*In re Republic of Ecuador*,
  No. C-10-80225, 2010 WL 4973492 (N.D. Cal. Dec. 1, 2010) ..............................................1

*Siemens AG v. W. Digital Corp.*,
  No. 8:13-CV-01407-CAS, 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ...............................7

*Matter of Simetra Glob. Assets Ltd. & Richcroft Investments Ltd.*,
  No. CV162389JLLJAD, 2016 WL 3018692 (D.N.J. May 25, 2016) .....................................7

*Super Vitaminas, S.A.*, Misc. Action No. 17-80125-SVK, 2017 WL 5571037 (N.D.
  Cal. Nov. 20, 2017) .................................................................................................................5

*In re Varian Med. Sys. Int'l AG*,
  No. 16-80048, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) .....................................7, 9, 10

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
  142 S. Ct. 2078 (2022) ............................................................................................................5

**Statutes**

28 U.S.C. § 1782 ............................................................................................................... *passim*

## I. INTRODUCTION

Under 28 U.S.C. § 1782 ("Section 1782"), interested parties, such as Applicant X.AI LLC ("xAI"), may obtain discovery from third parties located within the United States for use in foreign legal proceedings. This Court has routinely granted similar applications pursuant to Section 1782. *In re Republic of Ecuador*, No. C-10-80225, 2010 WL 4973492, at *10 (N.D. Cal. Dec. 1, 2010); *HRC-Hainan Holding Co., LLC v. Yihan Hu,* No. 19-MC-80277-TSH, 2020 WL 906719, at *15-16 (N.D. Cal. Feb. 25, 2020); *In re Okamoto*, No. 23-MC-80321-RFL, 2024 WL 1091356, at *2 (N.D. Cal. Jan. 10, 2024).

By this Application, xAI seeks targeted discovery from Respondents OpenAI, Inc., OpenAI Global, LLC, and OpenAI OpCo, LLC (collectively, "OpenAI") in support of litigation it has initiated in England against Jimmy Fraiture ("Fraiture") alleging, *inter alia*, breach of contract and trade secrets misappropriation (the "UK Litigation"). xAI's proposed subpoena is attached as Exhibit 1.[1]

As alleged in the complaint in the UK Litigation, Fraiture misappropriated xAI Confidential Information[2], including xAI source code—some of its most sensitive trade secrets responsible for cutting-edge AI technologies with features superior to those offered by OpenAI's ChatGPT and other competing products. Ex. 12 at Schedule 1. Fraiture then began employment with artificial intelligence (AI) market leader and ChatGPT maker OpenAI, one of xAI's primary competitors. Ex. 13 at ¶ 3.1.

---

[1] All Exhibits referenced herein are attached to the Declaration of Carson Swope filed with this Application.

[2] "xAI Confidential Information" shall have the meaning ascribed to the term "Confidential Information" in the Employee Confidential Information and Invention Assignment Agreement (Ex. 5), including: "any and all confidential knowledge, data or information" belonging to xAI, including as relevant here: "trade secrets, proprietary technology, inventions, mask works, ideas, processes, formulas, software in source or object code, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques, and any other work product of any nature and all Works [as defined in the AGREEMENT] and Inventions [as defined in the AGREEMENT] including all Intellectual Property Rights [as defined in the AGREEMENT] in the Works and Inventions [as defined in the AGREEMENT]; [and] any other non-public information that a competitor of Company or any Group Company could use to Company's competitive disadvantage."

By this Application, xAI seeks discovery that will support its claims in the UK Litigation. The requested discovery will allow xAI to uncover the full extent of Fraiture's misappropriation and identify any resulting harms. This will enable xAI to seek appropriate relief in the UK Litigation and protect its highly valuable trade secrets, including from any further misappropriation or weaponization by competitors such as OpenAI who, at a minimum, could use such information to improve competing products such as ChatGPT by incorporating Grok's unique and more advanced features (for example, in areas where Grok exceeds ChatGPT in industry benchmarks), undermine xAI's product roadmap, or disrupt xAI's market expansion strategy.

xAI's Application satisfies each of the statutory requirements of Section 1782. Each OpenAI entity is found within the Northern District of California, the discovery xAI seeks will be used in litigation in the UK, and xAI is an interested person because it is a party to and claimant in the UK Litigation.

The discretionary factors courts apply when considering Section 1782 applications also weigh strongly in favor of granting xAI's Application. OpenAI is not a party to the UK Litigation (which may limit the availability of discovery through the UK court), the court in the UK Litigation is expected to receive into evidence the information obtained by the proposed subpoena, xAI's Application does not conceal any attempt to circumvent any proof-gathering restrictions or other policies of the UK or the United States, and the proposed subpoena does not contain any unduly intrusive or burdensome requests.

Accordingly, xAI respectfully requests that the Court grant this Application.

## II. BACKGROUND

### A. xAI Is a Leading AI Company in a Fiercely Competitive Market

xAI is a leading artificial intelligence company founded in 2023 to advance human comprehension and capabilities through its Grok large language models (LLMs) and other advanced AI. Ex. 2 at ¶ 8[3]; Ex. 3 at ¶ 3. xAI's Grok is a preeminent frontier model, representing the cutting

---

[3] For convenience in describing the background in the industry, xAI is citing to relevant portions of the record in a separate lawsuit it recently filed in this Court against another engineer, Xuechen

edge of AI research and development and pushing the boundaries of what AI can do across multiple domains. Ex. 3 at ¶ 3. Competing alongside OpenAI's ChatGPT, Grok's newest release—Grok 4—is one of the most, if not the most, advanced and powerful generative AI systems in the world, leading industry benchmarks in reasoning and pretraining capabilities. *Id.*

### B. xAI's Confidential Information Drives Its Competitive Advantage

xAI entered the AI market a year after OpenAI launched ChatGPT in November 2022. *Id*. Because of xAI's extraordinary investment in its innovation, it has been able to deliver the world's most advanced AI model in just two years, leading industry benchmarks in reasoning and pretraining capabilities, and offering more innovative and imaginative features than ChatGPT. While traditional technologies that shaped Silicon Valley, such as semiconductors and mobile devices, are best safeguarded through patents, the most valuable and sensitive components of modern AI demand broader and more adaptable trade secret protection. Trade secrets protect xAI's innovation and intellectual property, including its model weights, training data, tuning methods, system prompts, know-how, and more. *Id*.

### C. xAI Filed the UK Litigation Alleging Fraiture Misappropriated xAI Trade Secrets

Fraiture was one of the first 50 engineers employed at xAI globally. Applin Decl. at ¶ 3. He was recently employed by X.AI London Ltd, an affiliate of Petitioner, until he resigned and his employment ended on September 1, 2025. Fraiture signed an Employee Confidential Information and Invention Assignment Agreement (the "Confidentiality Agreement") on March 4, 2025, which required, among other things, that he protect and not disclose xAI trade secrets or any other "Confidential Information," a term defined in the Confidentiality Agreement. Ex. 5.

On July 31, Fraiture copied xAI source code and a video recording of a confidential internal meeting, in which the Founder of xAI, Elon Musk, detailed xAI's future strategic and development

---

Li, who likewise admitted to copying xAI confidential source code and who had also accepted a position at OpenAI. *See* Ex. 2. Judge Lin recently granted a temporary restraining order in that case. Ex. 4. The timing of two engineers, in two different countries, copying xAI source code and accepting positions with the same competitor is particularly alarming and underscores the critical need for xAI to obtain discovery on an expedited basis directly from OpenAI to support the UK litigation and to enable xAI to protect its most valuable and competitively important trade secrets.

1   plans, to his personal Apple Macbook computer using the AirDrop feature. Applin Decl. at ¶ 4; Ex.
2   14 at ¶ 5. Fraiture, through his legal counsel, has admitted that he copied confidential xAI source
3   code and the video recording to his personal device, that he acted wrongfully, and that he was "not
4   forthcoming" and "not at all times honest" with xAI's internal security team. Ex. 14 at ¶¶ 4, 5, 9,
5   11.4.

6   Accordingly, on September 10, 2025, xAI filed a claim against Fraiture in the High Court of
7   Justice, King's Bench Division in England alleging trade secrets misappropriation and breach of
8   contract. Ex. 12. Petitioner here is named as an applicant/claimant in the UK Litigation. *Id.* None of
9   the OpenAI entities from whom xAI seeks discovery are named as defendants/respondents in the UK
10  Litigation. *Id.*

### III.   ARGUMENT

28 U.S.C. § 1782 provides, in relevant part, that:

> The district court or the district in which a person resides or is found may order him to give testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Courts should freely grant applications for judicial assistance under 28 U.S.C. § 1782 in the interest of justice and comity. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ("*Intel*"). "A district court's discretion is to be exercised in view of the twin aims of Section 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. 08-05124, 2009 WL 88348, at *2 (N.D. Cal. Jan. 13, 2009) (citing *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004)).

#### A.   xAI's Application Fulfills the Three Statutory Requirements of Section 1782

To obtain discovery in aid of a foreign litigation, three statutory requirements of section 1782 must be met: (1) the person from whom discovery is sought must reside or be found in the district where the application is made; (2) the information sought must be "for use in a proceeding in a

4

1  foreign or international tribunal"; and (3) the petitioner must be an "interested person" in the foreign
2  proceeding. 28 U.S.C. § 1782; *see also Intel*, 542 U.S. at 246; *Khrapunov v. Prosyankin*, 931 F.3d
3  922, 925 (9th Cir. 2019). Each of these requirements is satisfied here.

4  *First*, OpenAI "resides or is found" in this District. Each OpenAI entity from whom
5  discovery is sought are registered as foreign corporations to conduct business in California. Exs. 6,
6  8, 10. Each states, in its most recent corporate filing with the State of California, that its principal
7  place of business is in San Francisco, CA, which is in this judicial district. Exs. 7, 9, 11. This Court
8  has held that a legal entity with an office in a district "resides or is found" in the district. *See In re Ex*
9  *Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016) (holding that
10 corporate entities were found in the district because they maintained "in-district offices"); *Super*
11 *Vitaminas, S.A.*, Misc. Action No. 17-80125-SVK, 2017 WL 5571037, at *2 & n.1 (N.D. Cal. Nov.
12 20, 2017) (holding that a corporate entity was in touch in the district because it "operate[d two]
13 corporate sales offices" there); and *In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc.*,
14 Misc. Action No. 16-80193-DMR, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (holding that
15 a corporate entity was found in the district because it "maintain[ed] an office in th[e] district").

16 Moreover, OpenAI regularly conducts business in California and in this judicial district, not
17 only through the above subsidiaries, but also through distribution of various products and services,
18 including its ChatGPT AI models available through, for example, www.chatgpt.com. *See In re*
19 *Qualcomm Inc.*, 162 F. Supp. 3d at 1036–38 (holding that companies are found in a district where
20 "they conduct systematic and continuous local activities in this district.").

21 *Second*, the discovery the xAI seeks is "for use in a proceeding in a foreign or international
22 tribunal," specifically the UK Litigation.  The Supreme Court has held that, in the context of § 1782,
23 "a 'foreign tribunal' is one that exercises governmental authority conferred by a single nation." *ZF*
24 *Auto. US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2089 (2022). The UK Litigation was filed in the
25 High Court of Justice, King's Bench Division in England, which is a court of the United Kingdom.
26 King's Bench Division of the High Court - GOV.UK. This Court has recognized the High Court of
27 Justice as a qualifying "foreign tribunal" under Section 1782. *See, e.g.*, *IS Prime Ltd. v. Glassdoor,*
28 *Inc.*, No. 21-MC-80178-DMR, 2021 WL 5889373, at *3 (N.D. Cal. Dec. 13, 2021); *In re*

*Application of JSC Com. Bank Privatbank*, No. 21-MC-80216-VKD, 2021 WL 4355334, at *3 (N.D. Cal. Sept. 24, 2021).

*Third*, as claimant in the UK Litigation, xAI is an "interested person" for purposes of Section 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) (litigants to foreign proceeding for which discovery is sought are "included among, and maybe the most common example of, the 'interested person[s]' who may invoke § 1782").

### B.    xAI's Requested Discovery Satisfies Section 1782's Discretionary Factors

In addition to the three statutory requirements, district courts weigh four discretionary factors in determining whether to grant a request under section 1782: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, character of the proceedings, and the receptivity of the foreign government or court to U.S. federal-court judicial assistance; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. Again, here, each of these factors favors granting the Application.

#### 1.    OpenAI is not a participant in the UK Litigation

The first *Intel* factor asks whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 265. If the party is *not* a participant in the foreign proceeding, then this factor weighs in favor of granting an application for discovery under Section 1782 because the non-participant may be outside the foreign tribunal's jurisdictional reach and "their evidence, available in the United States, may be unobtainable absent Section 1782(a) aid." *Id.* at 264.

Here, OpenAI is not a party to the UK Litigation. Ex. 12. Further, English courts may not be able to compel testimony from nonparties such as OpenAI located outside the United Kingdom. *See, e.g.*, *In re Ex Parte Application of Qualcomm Inc. v. Apple Inc.*, No. 5:24-MC-80019-EJD, 2024 WL 536355, at *2 (N.D. Cal. 2024) (respondent is "not domiciled in the U.K.; therefore, the [UK] Tribunal would be unable to compel production of discovery without the aid of Section 1782"). Courts have found that—even where the respondent is a participant in the foreign litigation—if "the foreign tribunal's procedural rules may not allow for the discovery sought, this factor militates in

favor of granting relief." *In re Macquarie Bank Ltd.*, No. 2:14-cv-0797-GMN-NJK, 2014 U.S. WL 7706908, at *3 (D. Nev. June 4, 2014) (citing *In re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 274-75 (S.D.N.Y. 2004)).

This factor accordingly weighs strongly in favor of allowing xAI to obtain the limited discovery it seeks from OpenAI through this Application.

### 2.     The English court would accept the evidence xAI seeks from OpenAI.

The second *Intel* factor also favors granting the Application. Under this factor, courts evaluate "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. This factor "focuses on whether the foreign tribunal is willing to consider the information sought." *In re Varian Med. Sys. Int'l AG*, No. 16-80048, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (citation omitted). "[W]hen evaluating whether foreign tribunals would accept U.S. assistance, courts look for authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782." *Siemens AG v. W. Digital Corp.*, No. 8:13-CV-01407-CAS, 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013) (quotation marks and citation omitted).

It is well-settled that the English courts are receptive to discovery obtained through Section 1782 proceedings. *See In re Nat'l Bank Tr.,* No. 3:20-MC-85 (CSH), 2021 WL 118531, at *3 (D. Conn. Jan. 13, 2021) ("[movant] has not found, nor is the Court aware of, any authority to suggest that the English court would be unwilling to accept discovery under § 1782"); *Matter of Simetra Glob. Assets Ltd. & Richcroft Investments Ltd.*, No. CV162389JLLJAD, 2016 WL 3018692, at *4 (D.N.J. May 25, 2016) ("there is no indication that the English Court would reject the evidence that Petitioners seek to elicit[.]"); *In re Ex Parte Application of Glob. Energy Horizons*, No. 5:15-mc-80078-PSG, 2015 WL 1325758, at *2 (N.D. Cal. Mar. 24, 2015) ("There is no authority suggesting the English government would be hostile to or otherwise reject discovery obtained through a Section 1782 subpoena."); *Application of Sarrio S.A. for Assistance Before Foreign Tribunals*, 173 F.R.D. 190, 197 (S.D. Tex. 1995) (noting that "a decision of England's highest judicial body[] expressly approved a private litigant's use of section 1782 to gather evidence in the United States for use in

English proceedings."). Indeed, the Supreme Court noted expressly in *Intel* that England's highest judicial authority, the House of Lords, has already "ruled that nondiscoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782." *Intel*, 542 U.S. at 261–62 (*citing Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*, [1987] 1 App. Cas. 24).

Since the English court presiding over the UK Litigation is receptive to federal court assistance, this factor weighs in favor of granting the Application.

### 3. xAI does not seek to circumvent UK proof-gathering restrictions or public policy.

The third *Intel* factor considers "whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.'" *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 571 (9th Cir. 2011) (quoting *Intel*, 542 U.S. at 265). This factor also favors granting the Application.

The "circumvention" discretionary factor under *Intel* "entails neither a discoverability requirement nor a quasi-exhaustion requirement ... that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." *In re Newbrook Shipping Corp.*, 498 F. Supp. 3d 807, 819 (D. Md. 2020) (internal citations and quotation marks omitted); *see also In re ex parte Lee-Shim*, No. 513MC80199LHKPSG, 2013 WL 5568713, at *2 (N.D. Cal. Oct. 9, 2013) ("Section 1782 does not require the documents sought to be discoverable in the foreign courts"). Rather, courts applying this factor focus on "whether an applicant seeks in bad faith to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.*, at *2.

The Supreme Court has held that a party may use a Section 1782 application to seek more discovery than would otherwise be available through foreign discovery mechanisms without running afoul of the third factor. *See Intel*, 542 U.S. at 260 (holding that, absent a claim of privilege, Section 1782 does not "limit[] a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there"); *see also, e.g.*, *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-WHO(TSH), 2020 WL 820327, at

*5 (N.D. Cal. Feb. 19, 2020) (finding "[t]he fact that more evidence may be obtained via a § 1782 application than via the foreign discovery procedures does not amount to circumvention and does not militate against approval of the application"); *In re Procter & Gamble*, 334 F. Supp. 2d 1112, 1113 (E.D. Wis. 2004) (finding requested discovery was not an attempt to circumvent foreign proof-gathering restrictions even though its scope was greater than would otherwise be available in Japanese discovery).

Nothing in the Application would circumvent any proof-gathering restriction of the English courts. The mere fact that the UK Litigation was just filed and discovery may not yet have opened does not raise concerns under this factor. *In re Application of Credit Suisse Virtuoso SICAV-SIF in Respect of the Sub-Fund Credit Suisse (Lux) Supply Chain Fin. Fund*, No. 21-MC-80308-JCS, 2022 WL 1786050, at *12 (N.D. Cal. June 1, 2022) ("merely bringing an application before discovery has opened abroad, for documents that might well be outside the jurisdiction of the foreign court or require contested litigation to resolve that question, does not give rise to" concerns under the circumvention factor").

xAI seeks only to have OpenAI turn over responsive materials related to Fraiture's possession, use, and/or other misappropriation of xAI source code and Confidential Information to be used in the ordinary course in the UK litigation. As such, this factor also weighs in favor of granting xAI's Application.

### 4. xAI's proposed subpoena is not unduly burdensome.

The fourth *Intel* factor also favors granting the Application. This factor asks "whether the request is 'unduly intrusive or burdensome.'" *840 140th Ave.*, 634 F.3d at 571 (quoting *Intel*, 542 U.S. at 265). This factor is evaluated under "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015); *see also In re Varian*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *5 ("The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure."). The Federal Rules require discovery to be "'proportional' 'considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

The discovery that xAI seeks is highly probative of its trade secret misappropriation and breach of contract claims, and is neither unduly intrusive nor burdensome. Indeed, xAI's subpoena is narrowly tailored both in terms of scope and time, and seeks only the sort of information that parties routinely seek in the context of trade secrets litigation. *See* Exhibit 1. This information is directly relevant to the UK Litigation. Specifically, such documents would support xAI's claims that its source code and other Confidential Information were misappropriated by Fraiture in violation of his contract, and would help quantify the extent of the infringement and resulting harm. It would further allow xAI to identify appropriate remedial measures to seek in the UK Litigation to recover its Confidential Information and to remediate any harm caused by the misappropriation.

As for "the parties' relative access to relevant information," there can be no dispute that OpenAI has greater access to the critical information about the scope, nature, and use of xAI source code or other Confidential Information by Fraiture in connection with his employment at OpenAI. Thus, this factor weighs in favor of granting the Application.

### 5. The principles underlying Section 1782 weigh in favor of granting xAI's Application.

Finally, in addition to the above four factors, the Court may also consider the overarching principles of section 1782. "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. Although this legislation has undergone many amendments, these amendments have steadily and consistently moved the legislation in the singular direction of providing more, not less, discovery for use in more, not fewer, judicial and quasi-judicial forums in connection with more, not fewer, types of proceedings. *See Id.* at 248-49. Applying these factors and considering the overarching principles behind the statute, this Court should exercise its discretion and permit xAI to obtain the discovery it seeks from OpenAI by granting the Application.

### IV. CONCLUSION

Because the statutory requirements of section 1782 are satisfied, and the four discretionary

factors all weigh in favor of granting the Application, this Court should exercise its discretion to grant the Application and permit xAI to serve the subpoena attached as Exhibit 1 to the Application. *See Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002), *aff'd by Intel*, 542 U.S. 241 ("[A]llowance of liberal discovery seems entirely consistent with the two aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.").

Dated: September 26, 2025

By: */s/ Kathi Vidal*

KATHI VIDAL (State Bar No. 194971)
kvidal@winston.com
MATTHEW R. MCCULLOUGH (State Bar No. 301330)
mrmccullough@winston.com
CARSON SWOPE (State Bar No. 353352)
cswope@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

*Attorneys for Petitioner X.AI LLC*