# EXHIBIT 3

KATHI VIDAL (State Bar No. 194971)
kvidal@winston.com
CARSON SWOPE (State Bar No. 353352)
cswope@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

ALEXANDER H. COTE (State Bar No. 211558)
acote@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Plaintiffs X.AI Corp. and X.AI LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X.AI Corp., a Nevada corporation, and X.AI LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>XUECHEN LI, an individual,<br><br>Defendant. | Case No. _____<br><br>**DECLARATION OF BRUCE APPLIN IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER PERMITTING EXPEDITED DISCOVERY** |

APPLIN DECLARATION ISO PLAINTIFFS'
MOTION FOR TRO AND ORDER TO SHOW CAUSE
CASE NO. _____

I, Bruce Applin, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Senior Director of Information Security at X Corp., which is a wholly owned indirect subsidiary of X.AI Holdings Corp. I offer this declaration in support of the Motion for Temporary Restraining Order, Order to Show Cause Why Preliminary Injunction Should Not Issue, and Order Permitting Expedited Discovery brought by Plaintiffs X.AI Corp. and X.AI LLC (collectively "Plaintiff" or "xAI"). I am over 18 years of age and have personal knowledge of the matters set forth in this declaration. If called as a witness, I could competently testify under oath.

2. In my role as Senior Director of Information Security, I am a senior security executive overseeing crisis management, operational resilience, business continuity, insider threat, security investigations, security training, and employee background checks. In my work on Strategy, Governance, Risk, and Compliance (SGRC), I help X and xAI manage information security risks, ensure compliance with relevant regulations and standards, and manage security throughout the organizations. I engage in Open Source Intelligence (OSINT), gathering and analyzing publicly available information to produce actionable intelligence including as related to cybersecurity and national security threats. I have been employed at X Corp. (previously Twitter, Inc.) for more than five years. Prior to joining Twitter, I served 23 years as a Federal Law Enforcement Officer including 17 years as an FBI Agent.

3. xAI is a leading artificial intelligence company founded in November, 2023 – a year after OpenAI launched ChatGPT in November 2022 – to advance human comprehension and capabilities through its Grok large language models (LLMs) and other advanced AI. xAI's Grok is a preeminent frontier model, representing the cutting edge of AI research and development and pushing the boundaries of what AI can do across multiple domains. Competing alongside OpenAI's ChatGPT, Google's Gemini and China's DeepSeek, Grok's newest release – Grok 4 – is one of the most, if not the most, advanced and powerful generative AI systems in the world, leading industry benchmarks in reasoning and pretraining capabilities. Trade secrets protect xAI's innovation and intellectual property, including its model weights, training data, tuning methods, system prompts, know-how, and more.

4. xAI implements measures to protect its trade secrets, including routinely conducting security awareness training for all employees; conducting background checks on employees and

1

APPLIN DECLARATION ISO PLAINTIFFS'
MOTION FOR TRO AND ORDER TO SHOW CAUSE
CASE NO. _____

contractors who may access xAI data; conducting secure development and data handling training for employees with access to sensitive data, after which such employees must complete an assessment to demonstrate understanding; employing a team dedicated to information security; adopting the NIST 800-171 Rev.3 framework as a baseline for internal security standards; achieving SOC 2, Type II compliance; securing endpoints, including employee devices, with ongoing patch maintenance and full disk encryption; and maintaining a formal written information security policy, among other practices.

5. In addition, xAI requires each employee to enter into an Employee Confidential Information and Invention Assignment Agreement ("Agreement") at the start of their employment with xAI.

6. When employees leave xAI's employ, xAI reminds them that they must comply with the Agreement's terms. xAI also requires departing employees to certify their compliance in writing by signing a Termination Certificate.

7. On or about February 26, 2024, Xuechen Li ("Li" or "Defendant") began working for xAI as a Member of the Technical Staff. Defendant was one of xAI's first employees–his Employee ID number was 3.

8. Based on his passport, Xuechen Li is a Chinese national, with a date of birth of December 16, 1995. A redacted copy of Xuechen Li's passport, which he provided to xAI when applying for his employment, is attached as **Exhibit A**.

9. A true and correct copy of the Employee Confidential Information and Invention Assignment Agreement dated February 26, 2024, and signed by Defendant Xuechen Li, is attached as **Exhibit B**.

10. As one of xAI's initial group of approximately 20 engineers, Li was responsible for developing and training Grok, xAI's advanced AI model. In this role, Defendant had access to and responsibility for components across the entirety of xAI's technology stack. xAI entrusted Li with limited and controlled access to confidential documents and proprietary information, including xAI's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2
APPLIN DECLARATION ISO PLAINTIFFS'
MOTION FOR TRO AND ORDER TO SHOW CAUSE
CASE NO. _____

11. From time to time, xAI awarded stock options and shares to Li as part of his compensation. Through a transaction facilitated by xAI, Li sold some of his equity in July 2025. Li sold approximately $4.7 million on July 23, and over $2.2 million two days later, leaving him with millions in cash on July 25, 2025.

12. On the same day, July 25, 2025, three days before he announced his resignation, Li uploaded from his company-issued laptop ▮▮▮ ▮▮▮ ▮ confidential and proprietary xAI data, ▮▮▮ ▮▮ ▮▮▮▮▮ ▮▮▮▮▮▮, to his personal, non-work, Google account associated with the email ▮▮▮▮▮▮▮▮.

13. The confidential and proprietary xAI data that Li misappropriated is the result of the culmination of billions of dollars of investment and multiple years of AI development and training. The xAI data that Li uploaded is ▮▮▮▮▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮ ▮ ▮▮▮ comprehend ▮▮▮ ▮▮▮▮ ▮▮▮▮▮▮ ▮▮ ▮ ▮▮▮▮▮▮▮▮▮▮▮, and use the data to obtain a competitive advantage against xAI by preempting its product offerings and corporate objectives. The data could be weaponized by competitors such as OpenAI to, at a minimum, improve competing products such as ChatGPT with Grok's more innovative and imaginative features which make Grok one of the most, if not the most, intelligent generative AI chatbots, undermine xAI's product roadmap, and disrupt its market expansion strategy. It could save OpenAI and other competitors billions in R&D dollars and years of engineering effort, handing any competitor a potentially insurmountable advantage in the race to dominate the AI landscape.

14. On July 28, 2025, Li submitted a notice of resignation, and Li's last day as an xAI employee was August 1, 2025.

15. A true and correct copy of a termination certificate dated August 1, 2025, and signed by Li is attached as **Exhibit C**.

16. Before Li uploaded xAI's data to his ▮▮▮▮ account, he compressed the files and renamed them. After he uploaded them, Li deleted his browser history and system logs. xAI discovered the theft on August 11, 2025 during a routine review of logs from security software designed to detect and prevent data exfiltration.

3
APPLIN DECLARATION ISO PLAINTIFFS'
MOTION FOR TRO AND ORDER TO SHOW CAUSE
CASE NO. _____

17. On August 11, 2025, xAI sent a demand letter to Li, requiring the return and deletion of the stolen data by August 13, 2025, at 5:00 p.m. PT and requesting a detailed accounting of any disclosures or unauthorized use.

18. A copy of the demand letter sent to Li on August 13, 2025, without its enclosures, is attached as **Exhibit D**.

19. Upon finding substantial evidence of Li's exfiltration of xAI's Confidential Information and Li failing to respond to xAI's requests to return the information, xAI hired a private investigator to observe Li.

20. xAI contacted Li's criminal defense attorney, Sam Polverino, at around 5:06 pm on August 13, 2025. After discussing Li's conduct with xAI, Mr. Polverino agreed to bring his client to the offices of Winston & Strawn LLP, xAI's counsel, the next day.

21. On August 14 and 15, 2025, Li and Mr. Polverino appeared at the offices of Winston & Strawn, LLP at 255 Shoreline Drive, Suite 520, Redwood City, CA 94065, to discuss xAI's investigation of his personal devices including his laptops and personal smartphone for the presence, modification, or transmission of xAI's confidential and proprietary information.

22. During the August 14 and 15 meetings, Xuechen admitted to intentionally taking xAI's confidential and proprietary information, as well as his efforts to hide the fact that he did so. Specifically, he admitted to ▬▬▬▬▬ xAI data to his ▬▬▬ account and to deleting his system logs, to renaming files, and to compressing them prior to uploading them. Li also confessed to understanding the gravity of his actions. Li also memorialized his admission in writing. Attached hereto as **Exhibit G** is a true and correct copy of a note handwritten by Li answering the questions xAI asked in the demand letter of **Exhibit D**, and given to xAI on August 14.

23. Li also admitted, during the August 15 meeting, that he had signed a job offer with another company. He refused to identify the name of the company or describe his anticipated role. Li's counsel represented during the August 15 meeting that Li would be postponing his start date of employment.

24. During the same meeting, Li claimed that he was a permanent resident of Canada and admitted to traveling to Canada as recently as November 2024.

4
APPLIN DECLARATION ISO PLAINTIFFS'
MOTION FOR TRO AND ORDER TO SHOW CAUSE
CASE NO. _____

25. In addition to admitting guilt, Li provided xAI two laptops and a cell phone, but did not immediately provide xAI access to them.

26. Negotiations continued with Li and his counsel, culminating in Li's execution of a contract with xAI entitled Authorization for Access to Accounts and Personal Devices ("Authorization") on August 18, 2025. Attached hereto as **Exhibit E** is a true and correct copy of the Authorization.

27. Li's lawyer provided the Authorization to xAI by way of a cover email. A true and correct copy of an excerpt of the email chain between Li's lawyer and xAI is attached hereto as **Exhibit F**.

28. To date, Li has not provided password information for his ███████████ account despite repeated requests for that information. Li has yet to provide xAI with the access it needs to locate and destroy any xAI Confidential Information in Li's possession, custody or control. Li also failed to disclose the existence, let alone the credentials necessary to access, his ███████ email address, his ███████ account, and possibly a ███████ account.

29. Li may also have other accounts that contain xAI Confidential Information that he has not disclosed to xAI. xAI also remains in the dark about whether, where, and to whom Li may have shared the xAI's Confidential Information that he exfiltrated. Because of these facts, xAI's Confidential Information remains at risk of potential dissemination, and therefore, severe depreciation of value, because the value of xAI's Confidential Information is largely derived from the maintenance of its secrecy.

30. xAI customers, including customers located throughout the U.S. states, access Grok through the internet, including by using web browsers (grok.com), mobile phone apps, and by API access. Internet traffic serving some of these customers crosses state boundaries. Grok is thus a product or service used or intended for use in interstate commerce.

31. I understand that there is evidence that the job offer Li accepted but refused to disclose to xAI in the in-person meetings was a job offer from OpenAI. OpenAI, the maker of ChatGPT, is xAI's direct competitor. OpenAI controls at least 80 percent of the generative AI chatbot market, despite xAI's Grok being recognized for its superior and more innovative and imaginative features.

32. xAI customers, including customers located in U.S. states in which xAI has no servers, access Grok 4 through the computer web browsers at grok.com, mobile apps and by API access.

5
APPLIN DECLARATION ISO PLAINTIFFS'
MOTION FOR TRO AND ORDER TO SHOW CAUSE
CASE NO. _____

33.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28 day of August, 2025, at Flagstaff, ~~CA.~~ AZ

Bruce Applin